"O"

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
<u>CIVIL MINUTES -- GENERAL</u>

Case No.   EDCV 07-00272-SGL (OPx)                               Date: March 31, 2008

Title:   CALIFORNIA IRONWORKERS FIELD PENSION TRUST; CALIFORNIA IRONWORKERS FIELD WELFARE PLAN; CALIFORNIA FIELD IRONWORKERS VACATION TRUST; CALIFORNIA FIELD IRONWORKERS APPRENTICESHIP TRAINING AND JOURNEYMAN RETRAINING FUND; CALIFORNIA AND VICINITY FIELD IRONWORKERS ANNUITY TRUST FUND; CALIFORNIA FIELD IRONWORKERS ADMINISTRATIVE TRUST; CALIFORNIA FIELD IRONWORKERS LABOR MANAGEMENT COOPERATIVE TRUST; and IRONWORKERS WORKERS' COMPENSATION TRUST -v- W.C. BROWN WELDING, INC., a corporation, aka WC BROWN STEEL

=======================================================================
PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

         Jim Holmes                                    Theresa Lanza
         Courtroom Deputy Clerk                        Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:         ATTORNEYS PRESENT FOR DEFENDANTS:

Kerry K. Fennelly                         John W. Vineyard

PROCEEDINGS:   ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

     This is an ERISA unpaid employer contribution action under section 1132(g)(2) to the Employee Retirement Income Security Act of 1974 ("ERISA") in which plaintiffs, as trustees ("Trustees") of various employee benefit funds ("Funds"), seek to collect contributions owed to them under a multi-employer collective bargaining agreement ("CBA") entered into between W.C. Brown Welding, Inc. aka WC Brown Steel ("Brown Welding") and the District Council of Iron Workers of the State of California and Vicinity ("union"). Presently before the Court is the Trustees' motion for summary judgment, Brown Welding's opposition thereto, and the Trustees' reply. For the reasons set forth below and as stated on the record at the oral argument herein, the motion for summary judgment is **GRANTED**.

     The Funds provide the financing for various benefits to iron workers and their dependents working in Southern California through a multi-employer benefit plan within the meaning of ERISA. The Funds are administered by a board of trustees established in CBAs negotiated between local

MINUTES FORM 90                                        Initials of Deputy Clerk __jh_____
CIVIL -- GEN                          1                Time: 00/05

iron worker unions and individual employers in the iron working industry in Southern California.

The present dispute over unpaid contributions owed to the Funds arises from the obligations set forth in the Iron Workers Independent Agreement (which in turn incorporates by reference the Iron Workers Master Agreement) between Brown Welding and District Council of Iron Workers, Local Union No. 433.

Brown Welding operates a small welding and steel fabrication business and has eighteen full time employees none of whom are members of a union. (Decl. Winston C. Brown ¶ 2). However, "[f]rom time to time, [the company] has needed for additional workers on an 'overflow' or as needed basis[, something that] typically occurs when [Brown Welding] has a short term increase in work, or an unexpected deadline." (Decl. Winston C. Brown ¶ 4).

On or about April 30, 2002, Winston C. Brown, as President for the company, signed the Iron Workers Independent Agreement with Local Union No. 433. The Independent Agreement in turn incorporated the terms and provisions contained in the union's Master Agreement then in effect between it and a consortium of employer associations located in California and Nevada. The Independent Agreement (when read in conjunction with the Master Agreement) required Brown Welding to submit monthly reports and to pay to the Funds certain sums per hour for each hour paid and/or worked during each month by iron workers, regardless of their union affiliation, that were employed by the company. Moreover, Brown Welding was required to submit the monthly reports even if no iron workers are employed during the period covered by the report. Finally, the Agreement contained a liquidated damages section, pegged to twenty percent of the amount in delinquent contributions, for failures to make timely contributions. The Agreement also authorized the Trustees to examine and audit the books and records of Brown Welding (the cost payable by the company should any delinquencies were uncovered as a result of the audit) to determine whether the company was making full and prompt payment of its contributions to the Funds.[1]

The Trustees conducted three separate audits of Brown Welding's books and records uncovering that the company had failed to make $237,410.55 in contributions for the period August 1, 2003, to June 1, 2007. Interest on the outstanding contributions amounts to $68,814.28, with liquidated damages pegged at $74,030.15, and the cost of the audits themselves was estimated at $2,968.66. (Decl. Sherri Cuthbertson ¶¶ 16-23).

Despite being a signatory to the Independent Agreement (and thereby the Master Agreement), Brown Welding now challenges its contractual obligations to make contributions under those agreements, arguing that before its President executed that agreement he was told by a

---

[1] Brown Welding has challenged much of the evidence tendered by way of declarations and exhibits by the Trustees as either constituting inadmissible hearsay, the offering of expert testimony by way of a lay witness, or for not tendering a properly authenticated copy of the Master Agreement. All of these evidentiary objections have been dealt with adequately in the Trustee's reply memorandum and the Court should leave it at that.

union representative for Local Union 433, Mr. Mike Couch, that in signing the agreement the company would be obligated to make payments to the Funds "only for the Union members that were hired on prevailing wage projects," and that the agreement "would have no effect [on the company's obligations with respect to its] current [non-union] employees . . ., and that the company [could] continue to employee non-union members as its core, full time work force." (Decl. Winston C. Brown ¶¶5-6). Absent these representations, Brown Welding contends it would not have entered into the agreement if it knew that it "is obligated to contribute to the union trust fund for all employees, regardless of their union membership." (Decl. Winston C. Brown ¶ 7).

The company argues these statements made by the union representative entitle it to any of three affirmative defenses to meeting its contractual obligations recognized under common-law : Unilateral mistake, mutual mistake, and fraud in the inducement. (Opp. at 4 ("Whether induced by fraud, the result of unilateral mistake caused by [the union representative's] misrepresentations, or mutual mistake, Brown's failure to understand the terms and obligations of the contract render the contract void and unenforceable")). Brown Welding devotes the remainder of its opposition to explaining how, under state contract law, it would succeed under any one of these common law affirmative defenses. (Opp. at 4-6).

The contract at issue here is no ordinary contract, but one involving a multi-employer collective bargaining agreement requiring payments from an employer to a separate benefit fund. As a result there are multiple parties to the contract, such as the Trustees for the Funds, who are beneficiaries to the agreement but who were not involved in its formation. As the Ninth Circuit explained long ago:

> In an action to recover delinquent contributions, the trust fund stands in the position of a third-party beneficiary of the collective bargaining agreement. A third-party beneficiary's rights are generally subject to any contract defense which the promisor could assert against the promisee if the promisee were suing on the contract. However, a collective bargaining agreement is not a typical third-party beneficiary contract.

Southwest Administrators, Inc. v. Rozay's Transfer, 791 F.2d 769, 773 (9th Cir. 1986).

It is precisely because of the un-wieldy nature of the relationships involved that Congress made the decision to streamline the approach taken in recovering contributions owed under the terms of a collective bargaining agreement. Specifically, such agreements are not governed by the same common-law concepts which control private contracts, but rather by the provisions of ERISA, notably section § 1145. That section provides that an "employer who is obligated to make contributions to a multi-employer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions <u>in accordance with the terms and conditions of such plan or such agreement</u>." (emphasis added). The purpose behind the section was to simplify actions to collect delinquent

contributions, avoid costly litigation and enhance the actuarial planning necessary to the administration of multi-employer pension plans by limiting much of the defense to such actions to the four corners of the plan document itself, largely eschewing oral understandings and other parole evidence to supplement, alter, or negate the plan documents terms. See Southwest Administrators, 791 F.2d at 773 ("In recognition of the fact that millions of workers depend upon employee benefit trust funds for their retirement security, Congress and the courts have acted to simplify trust fund collection actions by restricting the availability of contract defenses, which make collection actions unnecessarily cumbersome and costly. In 1980, Congress amended ERISA by adding section . . . § 1145, to limit further the range of defenses available in an action for delinquent trust fund contributions").

As the Ninth Circuit explained: "If oral modifications to the express terms of the agreement by the employer and union were permitted, 'employees, basing their futures on the promise of an old-age pension provided in a union contract, may discover in later years to their surprise that an oral side-agreement had eroded the worth of their pension rights." Waggoner v. Dallaire, 649 F.2d 1362, 1366 (9th Cir. 1981). This is why section 1145 commands that "the unambiguous terms of a collective bargaining agreement providing for employee benefit contributions should prevail in all but the most compelling of circumstances." Southwest Administrators, 791 F.2d at 775.

Towards that end, most courts, like the Ninth Circuit, have recognized that there are only limited defenses available to the employer in delinquent contribution actions:

> An employer may not assert that the union orally agreed not to enforce the terms of the collective bargaining agreement . . . [,] that the employer was fraudulently induced to enter into the agreement[,] . . . or that no contract was formed because of unilateral or mutual mistake of fact. . . . Our research has disclosed only two defenses recognized by the courts: (1) that the pension contributions themselves are illegal . . . and (2) that the collective bargaining agreement is void (not merely voidable). Thus, once an employer knowingly signs an agreement that requires him to contribute to an employee benefit plan, he may not escape his obligation by raising defenses that call into question the union's ability to enforce the contract as a whole.

Benson v. Brower's Moving & Storage, Inc., 907 F.2d 310, 314 (2nd Cir. 1990).

Thus, in the Ninth Circuit, it is not a valid defense in a delinquent contribution action for the employer to argue that it was fraudulently induced into entering into the agreement as that would render the agreement itself merely voidable. See Southwest Administrators, 791 F.2d at 773-774; Southern California Retail Clerks Union and Food Employers Joint Pension Trust Fund v. Bjorklund, 728 F.2d 1262 (9th Cir. 1984). On the other hand, it is a valid defense if an employer's assent to the agreement was procured by fraud in the execution. See Operating Engineers Pension Trust v. Gilliam, 737 F.2d 1501 (9th Cir. 1984). The difference between these two types

of fraud can best be explained through juxtaposition of the facts in the two principal cases on the topic Bjorklund and Gilliam.

In Bjorklund, an employer entered into the multi-employer collective bargaining agreement relying upon the union representative's false assurance that the employer would be making pension fund contributions only for himself and his one full-time employee, his son, and that he would not be required to make contributions for his part-time employees.  728 F.2d at 1263-64.  Instead, the employer discovered that the agreement explicitly and unambiguously required that he was ineligible for pension benefits, and in addition, was required to make contributions on behalf of his part-time employees.  The employer argued he should be relieved from meeting his obligations contained in the CBA because he had been fraudulently induced into entering in the agreement in the first instance by the union representative's statements, an argument rejected by the Ninth Circuit.

In Gilliam, an employer signed a collective bargaining agreement under the impression (based on statements from the union representative made beforehand) that he was only applying to become a member of the union as an owner-operator so that he could operate his own equipment on a union job site, not that he was entering into an employee benefit fund.  737 F.2d at 1503.  When the trust fund brought an action to collect pension fund contributions owed under the agreement, the Ninth Circuit foreclosed the action, noting that the employer "had reasonably relied on the union's representation that he was signing a document of a wholly different nature."  Southwest Administrators, 791 F.2d at 774 (citing Gilliam, 737 F.2d at 1504-05)).

The distinction between the defenses of fraud in the inducement presented in Bjorklund and fraud in the execution presented in Gilliam is whether the employer signs the document understanding that it is a contribution agreement but believing the terms and conditions of the agreement are different than what they actually are in the written agreement (Bjorklund) or whether the employer believes it is signing a document different than what it actually is, meaning not knowing it is signing a contribution agreement (Gilliam).  As the Ninth Circuit explained it, in Bjorklund the fraud induced "a party to assent to something he otherwise would not have" while in Gilliam the fraud induced "a party to believe the nature of his act is something entirely different than it actually is" something going to the employer's "understanding of the basic nature of the transaction" itself.  Southwest Administrators, 791 F.2d at 774.

The fraud alleged in this case is on all fours with that the Ninth Circuit dealt with in Bjorklund.  The fraudulent misrepresentation went directly to Brown Welding's motivation for entering into the agreement; the alleged fraud did not cause the company to misunderstand the general nature of the agreement into which it was entering.  Brown Welding cannot persuasively contend that it did not understand it was executing a employee contribution agreement – counsel conceded as much at oral argument.  For his part, Mr. Brown admits in his declaration that he was fully aware that the document he signed was a collective bargaining agreement and that the agreement was effective as of the dates of the delinquent contributions at issue in this case.  Instead, his declaration speaks to his misunderstanding (be it by fraud or mistake) as to exact

EDCV 07-00272-SGL (OPx)
CALIFORNIA IRONWORKERS FIELD PENSION TRUST; CALIFORNIA IRONWORKERS FIELD WELFARE PLAN; CALIFORNIA FIELD IRONWORKERS VACATION TRUST; CALIFORNIA FIELD IRONWORKERS APPRENTICESHIP TRAINING AND JOURNEYMAN RETRAINING FUND; CALIFORNIA AND VICINITY FIELD IRONWORKERS ANNUITY TRUST FUND; CALIFORNIA FIELD IRONWORKERS ADMINISTRATIVE TRUST; CALIFORNIA FIELD IRONWORKERS LABOR MANAGEMENT COOPERATIVE TRUST; and IRONWORKERS WORKERS' COMPENSATION TRUST v W.C. BROWN WELDING, INC., a corporation, aka WC BROWN STEEL
MINUTE ORDER of March 31, 2008

nature of some of the specific terms in that admitted CBA, namely, his belief that, despite the express provisions in the agreement to the contrary, that the company would not be required to make contributions on behalf of its non-unionized employees but would only need to do so for its unionized members. Indeed, when pressed at oral argument, defense counsel conceded that there was no evidenced adduced in the case indicating that there had been fraud in the execution.

  Given that the nature of the defense to its express contractual obligations contained in the Independent Agreement (and by reference the Master Agreement) is one of fraudulent inducement, it is not a valid defense to the Funds' action to recover delinquent contributions.

  Accordingly, the Court **GRANTS** plaintiffs' motion for summary judgment and awards to plaintiffs damages in the amounts specified in its moving papers.

  **IT IS SO ORDERED.**